IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02101-MEH

JONELLA TESONE,

    Plaintiff,

v.

EMPIRE MARKETING STRATEGIES,
KELLY BRUCE, and
PAM NOCERINO,

    Defendants.

# ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

    Defendants Kelly Bruce and Pam Nocerino ("Defendants") seek to dismiss Plaintiff Jonella Tesone's claims for interference with a contract/prospective business relationship and intentional infliction of emotional distress ("IIED"). Ms. Tesone did not file a response to Defendants' motion. The Court first holds that Ms. Tesone pleads facts plausibly establishing her tortious interference claims as to Ms. Bruce, but not as to Ms. Nocerino. Next, the Court holds that Ms. Tesone's allegations do not support an IIED cause of action. Accordingly, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

**I.    Facts**

    The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Ms. Tesone in her Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 23, 2013, Defendant Empire Marketing Strategies hired Ms. Tesone as a team lead. Compl. ¶ 20, ECF No. 1. Empire classified Ms. Tesone as an at-will employee. *Id.* ¶ 46. Ms. Tesone primarily assisted with new product resets, store grand openings, audits, store calls, and new hire training at King Sooper stores in Colorado. *Id.* ¶ 1. When Ms. Tesone accepted Empire's offer of employment, she informed Empire that she had lifting restrictions because of lower back pain. *Id.* ¶ 23. Accordingly, Empire limited Ms. Tesone to lifting no more than fifteen pounds. *Id.* ¶ 24.

During Ms. Tesone's employment with Empire, Ms. Nocerino—Ms. Tesone's immediate supervisor—regularly reprimanded Ms. Tesone for the speed at which she performed tasks. *Id.* ¶ 25. Additionally, Ms. Nocerino consistently pushed Ms. Tesone to lift more than her fifteen-pound limit. *Id.* ¶ 26. As a result, Ms. Tesone began complaining of harassment to Ms. Bruce—Empire's President of Colorado Operations—in November 2016. *Id.* ¶ 27. Ms. Bruce responded by reprimanding Ms. Tesone for her lack of professionalism and failure to be a "team player." *Id.* ¶¶ 28–29. Defendants continued to admonish Ms. Tesone for her performance and physical limitations until February 28, 2017, when Ms. Bruce terminated Ms. Tesone. *Id.* ¶ 32.

## II. Procedural History

Based on these allegations, Ms. Tesone initiated this lawsuit on August 31, 2017. Compl., ECF No. 1. Ms. Tesone asserts three causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act against Empire, (2) Interference with a contract and a prospective business relationship against Ms. Nocerino and Ms. Bruce, and (3) IIED against Ms. Nocerino and Ms. Bruce. *Id.* ¶¶ 32–53.

Empire responded to the Complaint by filing an Answer, ECF No. 22. Ms. Bruce and Ms. Nocerino filed the present Partial Motion to Dismiss, which asks the Court to dismiss Ms. Tesone's

second and third claims for relief. Mot. to Dismiss, ECF No. 23. Regarding the tortious interference claims, Defendants contend Ms. Tesone does not allege they improperly interfered with Ms. Tesone's at-will employment contract. *Id.* at 5. Next, Defendants assert that Ms. Bruce's and Ms. Nocerino's alleged conduct was not sufficiently outrageous to give rise to an IIED claim. *Id.* at 6–8. Ms. Tesone did not file a response brief. On February 8, 2018, Defendants filed a Reply in Support of Their Motion to Dismiss, ECF No. 24.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on

3

context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

The Court first holds that Ms. Tesone does not plead facts establishing claims against Ms. Nocerino for interference with a contract or interference with a prospective business relationship. However, Ms. Tesone's allegations plausibly state tortious interference claims against Ms. Bruce. The Court then holds that Ms. Tesone fails to plead an IIED claim against either Defendant.

II. **Interference with a Contract and a Prospective Business Relationship**

Ms. Tesone's first claim alleges Defendants tortiously interfered with Ms. Tesone's existing at-will employment contract and her prospective employment relationship with Empire. Compl. ¶¶ 45–50, ECF No. 1. Colorado law recognizes two separate interference torts: interference with a contract and interference with a prospective business relationship. *Nutting v. RAM Sw., Inc.*, 106 F. Supp. 2d 1121, 1128 (D. Colo. 2000). "Tortious interference with a contract requires that: (1) the plaintiff have a contract with another party, (2) the defendant knew or should have known of such contract's existence, (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff, and (4) the defendant's actions caused plaintiff to incur damages." *Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151, 155 (Colo. App. 1999). The elements for interference with a prospective business relationship are similar; however, "it is not necessary to prove an underlying contract." *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981). It is sufficient to show the plaintiff suffered damages as a result of

the defendant's intentional interference with a prospective business relationship or contract. *Id.*

First, the Court finds that Ms. Tesone alleges an underlying contract with Empire of which Defendants knew or should have known. In the employment context, courts applying Colorado law have found that an at-will employment relationship constitutes a "contract" for purposes of a tortious interference claim. *Ramirez v. The GEO Grp., Inc.*, 655 F. Supp. 2d 1170, 1189–90 (D. Colo. 2009) ("[The plaintiff's] relationship with GEO did create an employment contract, albeit one that was 'at will' and terminable by either party at any time."); *Zappa v. Seiver*, 706 P.2d 440, 442 (Colo. App. 1985) ("Even a contract terminable at will is entitled to some protection from tortious unwarranted interference."); *Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2017 WL 2362137, at *6 (D. Colo. May 31, 2017) (stating that an individual can be liable for intentional interference with a contract "even where a plaintiff alleges interference with an at-will employment contract, in which the employer has the right to fire the employee at any time"). Ms. Tesone alleges she had an at-will employment contract with Empire. Compl. ¶ 46. Furthermore, because Defendants were Ms. Tesone's supervisors, they knew or should have known of the contract. Therefore, the Court must analyze whether Ms. Tesone pleads facts establishing that Ms. Bruce and Ms. Nocerino intentionally and improperly interfered with her employment contract.

Ms. Tesone does not plead such facts with regard to Ms. Nocerino. Importantly, Ms. Tesone alleges that Ms. Bruce, not Ms. Nocerino, terminated her. Compl. ¶¶ 31–32. Although Ms. Nocerino allegedly reprimanded Ms. Tesone for her performance and "pushed [her] to lift more than her medically prescribed lifting limits allowed," Compl. ¶¶ 25–26, Ms. Tesone does not allege that Ms. Nocerino influenced the termination decision. Because Ms. Nocerino did not interfere with Ms. Tesone's employment, Ms. Tesone's second claim fails as to Ms. Nocerino.

However, Ms. Tesone alleges that Ms. Bruce improperly interfered with her and Empire's employment relationship. In analyzing whether an officer or supervisor may be held personally liable for tortiously inducing the corporation's breach of contract with an employee, Colorado courts consider whether the supervisor was acting within the scope of her official duties. *Zappa*, 706 P.2d at 442 ("An officer or director of a corporation generally will not be held personally liable for inducing the corporation's breach of its contract if the officer or director is acting within the scope of his official duties."). A supervisor acts outside of his official duties when she terminates an individual out of personal bias or animus. *W.O. Brisben Co. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002) ("[A] corporate officer may be liable if he 'was motivated [by] personal animus towards one or both of the contracting parties.'" (quoting *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1478 (D. Colo. 1996))), *aff'd* 90 P.3d 859 (Colo. 2004). Similarly, when "the officer or director is motivated solely by a desire to induce the corporation to breach its contract with the plaintiff or to interfere in the contractual relations between the corporation and the plaintiff," the officer may be held liable. *Zappa*, 706 P.2d at 442; *Snoey v. Advanced Forming Tech., Inc.*, 844 F. Supp. 1394, 1401 (D. Colo. 1994) (stating that to prove an intentional interference claim against a corporate officer, the plaintiff must demonstrate that the officer acted "for his own personal interests and not the interests of the corporation"). Ms. Tesone's allegations, taken as true, establish that Ms. Bruce terminated Ms. Tesone out of personal bias, and not as part of her official duties.

Importantly, Ms. Tesone alleges Ms. Bruce improperly terminated her because of her disability. Compl. ¶ 31. Despite Ms. Tesone's estalished lifting limitation, Ms. Bruce allegedly reprimanded Ms. Tesone for her inability to lift more than fifteen pounds and for submitting disability harassment complaints. *Id.* ¶¶ 28–30. Approximately three months after Ms. Tesone

6

began complaining of discrimination, Ms. Bruce allegedly terminated her. *Id.* at ¶ 31. Therefore, Ms. Tesone has plausibly alleged that Ms. Bruce terminated her employment relationship out of personal disability bias. Indeed, Defendants do not seek dismissal of Ms. Tesone's first claim for relief, which alleges that Empire illegally terminated Ms. Tesone because of her disability.

Relevant case law applying Colorado law supports the Court's finding. In *Snoey*, the court acknowledged that a plaintiff asserting a tortious interference claim against a corporate officer must show the defendant was motivated by his personal bias, and not the interests of the corporation. 844 F. Supp. at 1401. The court held that the plaintiff demonstrated a disputed issue of fact as to his tortious interference claim, because the plaintiff "presented at least some evidence that [the defendant] was motivated by age bias . . . ." *Id.* Similarly, Ms. Tesone plausibly alleges her tortious interference claims against Ms. Bruce, because she asserts Ms. Bruce was motivated by disability bias.

In *Zappa*, the court held that the plaintiff demonstrated a disputed issue of fact as to whether the defendants fired him out of personal animus, because some evidence suggested the defendants retaliated against him. 706 P.2d at 442. According to the court, a trial was necessary to determine "the issue of whether defendant's action in terminating plaintiff's employment contract was motivated by improper personal reasons or by a desire to serve the corporate interests." *Id.* Similarly, because Ms. Tesone plausibly alleges Ms. Bruce terminated her as a result of her disability, Ms. Tesone pleads that her termination was motivated by improper personal reasons, and not a desire to serve Empire's interests.

Ms. Tesone's allegations that Ms. Bruce was motivated by disability bias distinguishes this case from *Varzirani v. Heitz*, 741 F.3d 1104 (10th Cir. 2013). In that case, the court considered

whether officers of a corporation could be liable for tortious interference under Arizona law, which also requires that an officer act out of personal animus, and not for the benefit of the employer. *Id.* at 1108. According to the court, the defendants were entitled to summary judgment, because the evidence indicated the defendants terminated the plaintiff for business reasons. *Id.* at 1108–09. Importantly, the court found "no supporting evidence" that the defendants were motivated by personal animus or racism. *Id.* at 1109. Conversely, Ms. Tesone has alleged that personal disability bias motivated Ms. Bruce's decision to terminate her. As such, Ms. Tesone has stated claims against Ms. Bruce for intentional interference with a contract and intentional interference with a prospective business relationship.

## II.     Intentional Infliction of Emotional Distress

Ms. Tesone's third claim for relief alleges that Ms. Nocerino and Ms. Bruce "engaged in a pattern of extreme and outrageous conduct that intentionally and recklessly caused Ms. Tesone severe emotional distress." Compl. ¶ 52, ECF No. 1. To assert a claim for IIED under Colorado law, a plaintiff must plead "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002). "[T]he level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). The defendant's conduct must "go beyond all possible bounds of decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 (1965)).

Here, Ms. Tesone fails to allege that Ms. Nocerino's and Ms. Bruce's conduct meets the high

8

bar of outrageousness required under Colorado law. Ms. Tesone alleges Ms. Nocerino consistently reprimanded her for her speed in performing work activities and "regularly pushed [her] to lift more than her medically prescribed lifting limits allowed." Compl. ¶¶ 25–26. Ms. Bruce discouraged Ms. Tesone from bringing harassment complaints and reprimanded her for professionalism and company policy violations. *Id.* ¶¶ 28–30. These allegations do not demonstrate conduct that goes beyond all possible bounds of decency.

Colorado courts generally do not permit IIED claims in the employment context unless the allegations involve excessive public humiliation, ridicule, and abusive treatment. *Compare Wing v. JMB Prop. Mgmt. Corp.*, 714 P.2d 916, 918–19 (Colo. App. 1985) (holding that allegations of sexual harassment, public humiliation, and reticule were sufficient to state a claim for IIED), *superseded by statute on other grounds*, Colo. Rev. Stat. § 24-34-306(14), *as recognized in Brooke v. Rest. Servs., Inc.*, 881 P.2d 409, 411 (Colo. App. 1994), *with Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800–01 (Colo. App. 1996) (allegations that the defendant took the plaintiff aside and informed him that he would be terminated as a result of his heart condition were insufficient to state an outrageous conduct claim). In *Ayon v. Kent Denver School*, the plaintiff alleged the defendants retaliated against her by refusing to speak with her, losing their temper with her, and scolding her to stop filing reports. No. 12-cv-02546-WJM-CBS, 2013 WL 1786978, at *3 (D. Colo. Apr. 26, 2013). The court found these allegations insufficient to state an IIED claim. *Id.* at *3–5. According to the court, "while Defendants' conduct—if found by the jury in conformity with the allegations asserted by Plaintiff in the IIED claim—may be actionable with respect to Plaintiff's employment claims generally, it does rise to the level which permits a jury to find that it is 'utterly intolerable in a civilized community.'" *Id.* at *4 (quoting *Coors Brewing Co.*, 978 P.2d at 666). Similarly, Ms.

Tesone's allegations that Defendants pushed her to work beyond her physical limits and reprimanded her for bringing disability discrimination complaints are insufficient to rise to the level of atrocious and utterly intolerable conduct.

Moreover, the allegations establishing Ms. Tesone's discrimination claim are the same as those supporting her claim for IIED. "Where the allegations forming the basis of a claim for outrageous conduct are the same as those forming the basis for a claim of discrimination, and nothing more, they fail to state an independently cognizable claim for which relief can be granted under Rule 12(b)(6)." *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997); *Bigby*, 937 P.2d at 800 ("[T]o hold that every discrimination claim automatically constituted outrageous conduct would stretch the tort far beyond its intended boundaries."). Ms. Tesone alleges Defendants discriminated against her by reprimanding her (and eventually terminating her) for refusing to lift more than her disability permitted. Compl. ¶¶ 33–39. According to Ms. Tesone, this same conduct caused her emotional distress. *Id.* ¶¶ 51–53. Because, "an IIED claim must be distinct from a plaintiff's employment claim," *Ayon*, 2013 WL 1786978, at *4, Ms. Tesone fails to state an IIED claim.

## **CONCLUSION**

In sum, the Court holds that Ms. Tesone's allegations, taken as true, are sufficient to state claims against Ms. Bruce for intentional interference with a contract and intentional interference with a prospective business relationship. However, because Ms. Tesone does not allege that Ms. Nocerino terminated her or caused Ms. Bruce to terminate her, Ms. Tesone's second claim fails as to Ms. Nocerino. Next, the Court holds that Ms. Tesone does not plead sufficient facts to give rise to an IIED claim. Accordingly, Ms. Nocerino is dismissed from this case. Defendants' Combined

Partial Motion to Dismiss Plaintiff's Complaint [filed January 12, 2018; ECF No. 23] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 12th day of February, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge